UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ARIN S.,                                                        Case No. 3:24-cv-00258-AR

               Plaintiff,                                    OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

       In this judicial review of the Commissioner's final decision denying Social Security

benefits, Arin S. (last name omitted for privacy) challenges the Administrative Law Judge's

findings regarding her subjective symptom testimony and that jobs exist in significant numbers

in the national economy that she can perform. (Pl.'s Br. at 1-2.) As explained below, the

Commissioner's decision is affirmed.[1]

_____

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have
consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28
U.S.C. § 636(c).

**BACKGROUND**

Plaintiff applied for Title II Disability Insurance Benefits (DIB) in January 2017, alleging disability beginning October 6, 2016. (Tr. 86.) Her application was denied in April 2018. (Tr. 63-82, 83-105.) Plaintiff filed applications for both Title II DIB and Title XVI Social Security Income (SSI) in June 2018, alleging disability from May 1, 2018. (Tr. 255, 277.) Her claims were again denied. (Tr. 182.) After a July 7, 2000 hearing,, the ALJ issued an unfavorable decision on July 22, 2020. (Tr. 10-32, 33-62.) Plaintiff sought district court review, and, on September 20, 2022, the court reversed and remanded the ALJ's decision for further proceedings. (Tr. 1287-98.) The court instructed the ALJ on remand to (1) "consider and properly weigh [plaintiff's] subjective symptom testimony, particularly with respect to her headaches, migraines, and seizure disorder, and incorporate those findings into the RFC" and (2) "elicit new testimony from a vocational expert regarding the claimant's ability to perform jobs in the national economy." (Tr. 1297-98.)

An ALJ held a new hearing on July 25, 2023. (Tr. 1259-1286.) At that hearing, plaintiff amended her application to request a closed period of disability from May 1, 2018 through January 1, 2021. (Tr. 1265-66.) On October 20, 2023, the ALJ issued an unfavorable decision, and plaintiff again sought review of the ALJ's decision to the court. (Tr. 1221-50.)

**ALJ'S DECISION**

In denying plaintiff's applications for a closed period of DIB and SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had

---

[2]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not

not engaged in substantial gainful activity (SGA) between May 1, 2018, her alleged onset date, and January 1, 2021, when she returned to work earning above SGA levels. (Tr. 1227.) At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease, headaches, vertigo, status post avulsion fracture of the left fibula, pseudoseizure disorder, fibromyalgia, depressive disorder, anxiety disorder, and trauma disorder. (Tr. 1227.) At step three, the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 1228.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the ability to perform light work with these limitations:

> [s]he can stand and walk for a combined total of four hours; she can occasionally climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, and crouch; she can never crawl; she can occasionally reach overhead and can frequently reach in all other directions; she can frequently handle, finger, feel, push and pull; she can have occasional exposure to extreme temperatures, pulmonary irritants, and vibration; she can have no exposure to hazards; she can understand, remember, and carry out simple instructions, and can use judgment to make simple work related decision[s]; she can deal with occasional changes in a routine work setting; and she can occasionally interact with coworkers, and the public.

(Tr. 1229.) At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 1242.) Considering her RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including the representative occupations merchandise marker, small products assembler, and production assembler. (Tr. 1243.)

---

disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.    *Subjective Symptom Testimony*

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for disregarding her subjective symptom testimony. (Pl. Br. at 5.) Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an

easy requirement to meet." *Garrison,* 759 F.3d at 1015*; Trevizo,* 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony regarding the frequency and intensity of her migraine headaches and seizure disorder. In plaintiff's view, the ALJ's failure to either accommodate the limitations arising from these impairments or, explain why an accommodation is not required, amounts to reversible error. (Pl. Br. at 5.)

### 1. Plaintiff's employment record

The ALJ discounted plaintiff's testimony about how her migraine headaches have affected her because "she has been able to maintain employment at a substantial gainful activity level for over two years, despite having migraines at almost the same frequency as she has had for several years." (Tr. 1231.) According to the ALJ, plaintiff's ability to maintain steady employment despite her headaches suggests her headaches "would not have prevented [her] from working in the past." (Tr. 1231, citing Tr. 1064, 1531, 1586.) This basis for discounting plaintiff's symptom testimony was supported by substantial evidence.

To start, plaintiff reported no significant decrease in the frequency or intensity of her migraines between the requested closed period of disability and the years after that in which she was working at above-SGA levels. For example, as the ALJ noted, plaintiff reported having six to seven migraines a month in September 2019. (Tr. 1231, citing Tr. 1064.) In January 2020, she reported having several migraines a month. (Tr. 1092.) In July 2020, she reported having "about

two migraines a month" (Tr. 1614.) In January 2021, after the requested closed period ended and she returned to work, she continued to report "getting migraines several times a month." (Tr. 1586.) She was told to continue sumatriptan as needed. (Tr. 1586.) In August 2021, plaintiff reported having had only two migraines since her last visit. (Tr. 1563.) In March 2022, plaintiff reported having five or six migraines a month. (Tr. 1231, citing Tr. 1531.) It is thus clear to the court that plaintiff had maintained steady employment since the end of her requested closed period of disability, despite no significant change to her migraines. This is, as the ALJ noted, substantial evidence that she could have maintained employment during the relevant period.

Plaintiff concedes that she has maintained consistent employment since the end of the closed period but argues that the ALJ failed to consider the accommodations (time off for headaches and use of a service dog) she receives through her current employer. (Pl. Br. at 6-7.) That argument fails, however, because plaintiff worked for a different employer without accommodations from January 2021 through December 2022, with no reported changes to her migraine frequency. (*See* Tr. 1064, 1531, 1586.) Indeed, plaintiff frequently reported a high level of job satisfaction, despite working an average of fifty or more hours per week. (Tr. 1504, 1517, 1536.) In December 2021, plaintiff reported to providers that she was working sixty hours a week with "good satisfaction" with her job. (Tr. 1652.)  It was not until she "had a stress related seizure while she was in a crawl space" in December 2022, that she switched to her current employer. (Tr. 1484.)  The record shows that she "felt that her [former] employer was not supportive" and she resigned. (Tr. 1484.) She then found a new job which she started that same December. (Tr. 1484.) The ALJ thus reasonably concluded plaintiff's headaches and seizures

were not disabling, given her ability to maintain consistent employment while reporting continuous migraine and seizure symptoms.

### 2. Medical evidence

The ALJ cited medical evidence, including physical exams that were "largely normal." However, it is unclear to the court how largely normal physical exams discount symptom testimony pertaining to plaintiff's migraine headaches. The absence of corroborating objective medical evidence alone is not sufficient to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Trevizo*, 871 F.3d at 679 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). Nor does the ALJ provide any guidance as to whether plaintiff's symptom allegations should be credited, as the ALJ provides what appears to be no more than a thorough summary of the medical records. This failure amounts to an error because the ALJ must link the evidence cited to the testimony found to be not credible. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("providing a summary of medical evidence is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible") (citation and internal quotations and ellipses omitted); *Holcomb v. Saul*, 832 F. App'x 505, 506 (9th Cir. 2020) ("the ALJ discussed relevant medical evidence but failed to link [the claimant's] symptom testimony to specific medical records and explain why those records contradicted [his] symptom testimony," thereby committing reversible error). Even so, because the ALJ provided other clear and convincing reasons to discount plaintiff's symptom allegations and supported those reasons with substantial evidence, this error is ultimately harmless.

### 3. Conservative treatment

The ALJ stated that "generally conservative treatment recommendations by [plaintiff's] medical providers" supported no greater limitations than those provided in the RFC. Conservative treatment can be a sufficient basis for discounting a claimant's symptom allegations. *See Smartt*, 53 F.4th at 500 (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment) (quoting *Parra*, 481 F.3d at 751). Here, the ALJ's conclusions are a reasonable reading of the record. For example, the record shows that plaintiff's seizures are considered "non-epileptic pseudo-seizures" that are triggered by stress; her treatment recommendations have thus been "to avoid triggers and monitor." (Tr. 1233, citing Tr. 761, 1064.) Plaintiff's migraine and headache symptoms are treated with "90 % effectiveness" with routine medication such as acetaminophen and sumatriptan. (Tr. 714, 727, 761, 765, 1092, 1233, 1563, 1586.) The use of pain medication and recommending avoiding stress and monitoring symptoms are examples of conservative treatments—hence, the ALJ did not err. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *see also Cervantes v. O'Malley*, 2024 WL 3569543, at *7 (E.D. Cal. July 26, 2024) (describing "pain medications, muscle relaxants, and physical therapy" as a conservative combination of treatment related to back pain).

### 4. Activities of daily living

The ALJ made no specific findings as to how plaintiff's daily activities were inconsistent with her testimony or, alternatively, how her activities met the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (two ways daily activities may

support discounting symptom testimony: (1) the activities contravene the claimant's allegations of functional limitations; or (2) the activities "meet the threshold for transferrable work skills[.]") Instead, the ALJ found only that plaintiff's daily activities were "consistent with the [] residual functional capacity." (Tr. 1238.) As the ALJ did not explain "which daily activities conflicted with which part of [her] testimony," the ALJ erred in rejecting Plaintiff's subjective symptom testimony because of her activities of daily living. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). This error, however, is harmless because the ALJ provided additional clear and convincing reasons supported by substantial evidence for discounting plaintiff's symptom testimony, including plaintiff's ability to work at above SGA levels despite reporting symptoms at similar levels of intensity and frequency and those during the alleged period of disability, and medical evidence showing largely routine, conservative treatment.

### 5.  RFC limitations from seizure disorder

Plaintiff argues that the ALJ needed to account for in the RFC any hypothetical "workplace disruption that would occur" should plaintiff experience a seizure at work. (Pl. Br. at 10.) But the ALJ appropriately evaluated plaintiff's reports as to the frequency and severity of her seizures and determined suitable postural and non-postural limitations to account for plaintiff's symptoms. Considering plaintiff's seizures are infrequent and are triggered by stress, the ALJ first determined that plaintiff "can have no exposure to hazards," which minimizes the risk of physical injury. (Tr. 1229.) The ALJ then addressed plaintiff's exposure to stress, limiting her to understanding, remembering, and carrying out only "simple instructions" and only using her judgment to "make simple work-related decision[s]." (Tr. 1229.) Finally, the ALJ further limited plaintiff's exposure to workplace stress by limiting her to only "occasional changes in a

routine work setting" and occasional interactions with "coworkers, and the public." (Tr. 1229.) In the court's view, these are appropriate limitations designed to sufficiently minimize plaintiff's exposure to both physical and psychological risks. (Tr. 1234.) The ALJ was not required to include more restrictive limitations than the record indicates. *See* SSR 96-8p; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (concluding an ALJ is only required to include in the RFC those symptoms and limitations which the ALJ determines are reliable and consistent with the record as a whole).

In sum, the ALJ provided clear and convincing reasons to discount plaintiff's subjective symptom testimony. The court rejects plaintiff's challenge on this basis.

**B.    *Vocational Expert Testimony***

The ALJ assessed plaintiff's RFC as the ability to perform light work with a limitation that included, among other things, standing and walking for a combined total of four hours. (Tr. 1229.) Although the VE who testified at the hearing acknowledged that plaintiff's past work as a plumber would exceed those limitations, the VE opined that there were other occupations existing in the national economy that would fit within those limitations. (*Id*.) Those occupations are marker for merchandise, small products assembler, and production assembler—all listed in the Dictionary of Occupational Titles (DOT). When the ALJ asked the VE whether the VE's testimony "varied or departed from the DOT" given the RFC limitations, the VE responded that there were in his opinion no conflicts based on his "education, training and professional knowledge and experience." (Tr. 1284.)

Plaintiff on review points out that the DOT has defined light work as requiring a significant degree of standing and walking and the Regulations define light work as requiring

"frequent lifting or carrying" of objects 10 pounds or less; "a good deal of walking or standing"; and, if mostly sitting, "some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). And plaintiff explains that the Commissioner has clarified that, because light work "requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. The discrepancy between the limitations in the hypothetical posed to the VE and those definitions of light work needed, plaintiff contends, explanation from the VE. (P's Br. at 14.) Plaintiff contends that, as provided by SSR 00-4p, the explanation for the discrepancy must be reasonable: "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." The question presented to the court by plaintiff is whether the VE's explanation that there were no conflicts based on his "education, training and professional knowledge and experience" was a reasonable explanation.

Although the court acknowledges that the generalized response of saying that there was no conflict based on education, training, and experience does not illustrate precisely how any discrepancy between the posed hypothetical and the DOT listings was resolved, the ALJ nevertheless satisfied the duty to resolve the discrepancy by asking the VE whether there was a conflict: "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00-4p. The VE responded that there was no conflict, and the ALJ was entitled to rely on that opinion. That is, Ninth Circuit case law instructs that a VE's testimony about whether a claimant

can perform occupations that exist in significant numbers in the national economy is inherently reliable. *See, e.g.*, *Kilpatrick v. Kijazaki*, 35 F.4th 1187 (9th Cir. 2022). And the Ninth Circuit has, in at least one instance, indicated that asking the VE whether there is a conflict is sufficient evidence for a step-five finding. *See id*. at 1195 ("The ALJ specifically asked the VE whether his testimony conflicted with the DOT, and [the VE] confirmed it did not. The ALJ thus expressly found that [the VE's] testimony was 'consistent with' the DOT.").

Consequently, substantial evidence supports the ALJ's step-five finding.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

IT IS SO ORDERED.

ORDERED: December 31, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge